IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOUTH PARK VENTURES, LLC,<br>    Plaintiff,<br><br> vs<br><br>JOHN JACK, NOBLE ZICKEFOOSE and<br>TERRY CLARK,<br>    Defendants. | Civil Action No. 17-373<br>Judge Fischer<br>Magistrate Judge Mitchell |

I.   Recommendation

It is respectfully recommended that the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 filed by the defendants (ECF No. 8) be granted and that this action be transferred to the United States District Court for the Southern District of Ohio, Eastern Division.

II.   Report

Plaintiff, South Park Ventures, LLC ("SPV"), brings this action against Defendants, John Jack, Noble Zickefoose and Terry Clark, alleging that they breached their fiduciary duties to SPV as officers and directors of Water Energy Services, LLC ("WES"), and for misrepresentation and fraud. Plaintiff filed this action in the Court of Common Pleas of Washington County, Pennsylvania and Defendants removed it to this Court and filed an Answer to the Amended Complaint.

Currently pending before the Court is Defendants' motion to transfer venue to the United States District Court for the Southern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the motion should be granted.

 Facts

SPV is a Pennsylvania limited liability company with its principal place of business located in Canonsburg, Pennsylvania. SPV is a member and 50% interest holder of WES, also a

Pennsylvania limited liability company with its business offices located in Canonsburg, Pennsylvania. The other 50% member of WES is Tri-State Disposal, LLC ("Tri-State") of which Jack, Zickefoose and Clark collectively own a 50% membership interest. (Am. Compl. ¶¶ 1, 6, 8.)[1]

WES was formed on March 11, 2014 by the filing of a Certificate of Organization with the Commonwealth of Pennsylvania Department of State. WES was engaged in the business of disposing of waste water generated from the oil and gas industry in three Class II injection wells which it leased in Marietta, Ohio. (Am. Compl. ¶¶ 7, 19.)[2]

On or about March 5, 2015, SPV and Tri-State entered into an Operating Agreement of Water Energy Services ("WES Operating Agreement"). In accordance with the provisions of the WES Operating Agreement, WES was managed by a Board of Managers. Dean Grose ("Grose") was designated as the SPV selected manager of WES. Defendant Jack, the manager of Tri-State, was designated as the Tri-State selected manager of WES. Jack was also appointed as the Chief Executive Officer of WES. (Am. Compl. ¶¶ 11-13 & Ex. A.)

The WES Operating Agreement provides that the Managers and officers of WES shall in the performance of their duties owe to WES and its Members "the fiduciary duties (including the duties of loyalty and care) of the type owed under law by directors and officers of a business corporation incorporated under the laws of the Commonwealth of Pennsylvania." (Am. Compl. ¶ 57; WES Operating Agreement ¶ 14.1.) Under the choice of law provision, the WES Operating Agreement provided that "all questions arising hereunder or in connection herewith shall be governed by the laws of the State of Pennsylvania." (WES Operating Agreement ¶ 27.)

---

[1] ECF No. 1-3.
[2] Marietta is a city in Washington County, Ohio, which is in the Southern District, Eastern Division, to which Defendants propose transfer. 28 U.S.C. § 115(b)(2).

On or about March 10, 2015, WES executed a Secured Promissory Note in favor of SPV promising to repay SPV the sum of $2,000,000.00 for amounts loaned and advanced to WES ("SPV Note"). The SPV Note was executed on behalf of WES by Jack as its CEO and selected the laws of Pennsylvania to govern disputes related to the SPV Note. (Am. Compl. ¶ 21 & Ex. B.)

In addition to the loan from SPV, on August 31, 2015 WES entered into a Multiple Draw Note with First Niagara Bank, NA in the principal amount of $4,000,000.00 ("First Niagara Note") in order to finance the construction of the WES facility. Comtech Industries, Inc. ("Comtech"), which is a 50% owner of SPV, and Heinrich Production, LLC ("Heinrich")[3] were required to execute a Limited Guaranty Agreement whereby Comtech and Heinrich each guaranteed $2,000,000.00 of the First Niagara Note. (Am. Compl. ¶¶ 24-25.)

In early 2016, First Niagara indicated that the provisions of its Note were in default and requested WES to produce a plan to cure the default. Plaintiff alleges that, rather than develop a plan to cure the defaults, the Defendants solicited Trive Capital, LLC ("Trive") to purchase the First Niagara Note in order to gain control of WES to the exclusion of SPV. (Am. Compl. ¶¶ 34-37 & Ex. C.)

In response to Jack's request, Trive made an offer to First Niagara to purchase the First Niagara Note. In order to protect their respective investments in WES and prevent an adverse Trive from owning their corporate guarantees, Comtech and Heinrich formed Funds Protection Investment, LLC ("FPI") to purchase the First Niagara Note from First Niagara Bank. (Am. Compl. ¶¶ 38-39.)

---

[3] Heinrich is a 50% owner of Horizon Partners Investment, LLC. Horizon owns a 50% interest in Tri-State and Jack, Zickefoose and Clark collectively own the remaining interest in Tri-State. (Am. Compl. ¶¶ 9-10.)

On February 25, 2016, Westfall Builders, Ltd. ("Westfall") filed a mechanic's lien in Washington County, Ohio in the amount of $1,763,563.71. Trive formed TCFII Westfall, LLC ("TCFII") which purchased the mechanic's lien from Westfall. (Am. Compl. ¶¶ 40-42.)

On June 6, 2016, TCFII filed an action in the Court of Common Pleas of Washington County, Ohio at docket number 16 FR 161 to foreclose on its lien on the WES assets. FPI, a secured creditor by virtue of the assignment from First Niagara Bank, intervened in the foreclosure action, and filed a motion for the appointment of a receiver over the WES assets (the "Receiver Action"). (Am. Compl. ¶¶ 43-44.)

On July 29, 2016, the Court appointed Kenneth B. Leachman as the Receiver for WES. The Receiver was charged with selling WES as a going concern. As part of the receivership process, the Receiver obtained approval from the Court to conduct an auction of the WES assets. The auction was concluded on December 6, 2016. FPI was the successful bidder with a bid of $7,146,194.00. The Receiver issued his report regarding the sale of the WES assets and on January 11, 2017 a closing was held whereby the Receiver executed a Bill of Sale to DeepRock Disposal Solutions, LLC ("DeepRock") as the assignee of FPI. (Am. Compl. ¶¶ 46-54 & Ex. D.)

<u>Prior Proceedings</u>

As noted above, there is a Receiver Action pending in the Court of Common Pleas of Washington County, Ohio. In June 2016, FPI agreed to the appointment of a receiver in Columbus, Ohio to be responsible for selling the assets and operations of WES and who oversaw the auction of WES's assets to FPI, because SPV and FPI both consented to that court as the proper forum to bring those WES-related claims and because the court in the Receiver Action is permitting discovery as to whether any collusion occurred prior to the auction.

In addition, DeepRock sued Jack, Zickefoose and Clark (Defendants herein) in the Court

of Common Pleas of Washington County, Ohio, for claims that DeepRock allegedly acquired from WES as part of the sale of assets, including four counts of breach of fiduciary duty and breach of WES-related agreements. (ECF No. 8 Ex. B.)

On June 3, 2016, Jack and Tri-State filed a complaint against SPV and Grose in the Court of Common Pleas of Washington County, Ohio. SPV and Grose removed the action to the District Court for the Southern District of Ohio (the "Ohio Federal Action"). Jack and Tri-State allege claims for breach of the WES Operating Agreement, breach of fiduciary duties and responsibilities arising out of WES and the WES Operating Agreement and defamation. The court granted in part and denied in part SPV and Grose's motion to dismiss on March 13, 2017, and on March 27, 2017, Jack and Tri-State filed an amended complaint. (ECF No. 8 Ex. C.)

Procedural History

Plaintiff filed this action on June 9, 2016 in the Court of Common Pleas of Washington County, Pennsylvania against Jack and WES, and on March 3, 2017, Plaintiff filed an Amended Complaint, naming as Defendants Jack, Zickefoose and Clark. (ECF No. 1-3.) Count I alleges that Defendants breached their fiduciary duties as officers and directors of WES. Count II alleges a claim for misrepresentation and fraud.

On March 23, 2017, Defendants filed a Notice of Removal, removing the action to this Court on the basis of diversity of citizenship, in that: SPV is an LLC whose members (Courtney Grose, Comtech Industries, Inc. – a Pennsylvania corporation – and Executive Consultants LLC, whose member is Pennsylvania citizen Jeff Ryan) are all Pennsylvania citizens; Jack is an Ohio citizen; Zickefoose is a West Virginia citizen and Clark is an Ohio citizen; and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a).

5

(Notice of Removal ¶¶ 4-8.)[4]

On May 2, 2017, Defendants filed a motion to transfer venue (ECF No. 8). Plaintiff filed a response to the motion on May 30, 2017 (ECF No. 16). On June 13, 2017, Defendants filed a reply brief (ECF No. 23).

Standard of Review

Section 1404(a) of Title 28 of the United States Code states that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Thus, resolution of a transfer motion requires three steps: 1) determine whether the proposed transferee court is a venue where the action "might have been brought" under the federal venue statute; 2) evaluate the relevant "private factors" relating to "the convenience of parties and witnesses"; and 3) examine the "public factors" relating to "the interest of justice" and weigh them to determine if the action should be transferred. Shutte v. Armco Steel Corp., 431 F.2d 22, 24-25 (3d Cir. 1970); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). See In re Volkswagen of America, Inc., 545 F.3d 304, 312, 314 (5th Cir. 2008) (en banc).

Where the Action Could Have Been Brought

Defendants argue that this action could have been brought in the Southern District of Ohio because "a substantial part of the events or omissions giving rise to the claim occurred" there, inasmuch as WES has its principal place of business, facilities, operations and employees there and the receivership was conducted in Washington County, Ohio, which is also in the Southern District. 28 U.S.C. §§ 115(b)(2), 1391(b)(2).

---

[4] ECF No. 1.

Plaintiff does not dispute that this action could have been brought in the Southern District of Ohio. Defendants have demonstrated that this action could have been filed in the Southern District of Ohio. Therefore, the next issue is whether the weighing of appropriate factors means that the case should be transferred the case to that district.

Deference to Plaintiff's Chosen Venue

Ordinarily, a court must "give some weight to the plaintiffs' choice of forum." Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S.Ct. 568, 581 n.6 (2013) (citing Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)). "The burden for establishing the need for transfer still rests with the movant … [and] in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879 (citations omitted).

Plaintiff argues that a strong presumption applies here and that its choice of forum is entitled to "paramount consideration." Shutte, 431 F.2d at 25. However, this argument is flawed in that it is based on a formulation that first appeared in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947), but that case was decided under the doctrine of forum non conveniens. The Supreme Court has made clear that: "District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of forum non conveniens." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981). See also Norwood, 349 U.S. at 32 ("Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience.") See In re Volkswagen, 545 F.3d at 313-15 (district court erred in requiring the defendant to show that the § 1404(a) factors substantially outweighed the plaintiff's choice of venue, improperly applying the stricter forum non conveniens standard). In addition, if a plaintiff's choice of forum were always entitled to "paramount consideration," it would make no sense to list the defendant's preference as a factor

7

to be weighed, Jumara, 55 F.3d at 879, because by definition in any venue transfer situation the defendant will have moved to transfer the case to a venue that the plaintiff does not favor.[5]

Defendant's forum choice is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." Alcantarilla v. State Farm Mut. Auto. Ins. Co., 2015 WL 8785007, at *8 (W.D. Pa. Dec. 15, 2015) (McVerry, J.) Nevertheless, it is a factor to be weighed in the analysis.

Other Factors

The Court of Appeals has noted that, in ruling on § 1404(a) motions, courts have not limited their consideration to the convenience of parties, witnesses, or interests of justice but have considered many variants of the private and public interests protected by the language of § 1404(a). Jumara, 55 F.3d at 879. The court noted that:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable law in diversity cases.

Id. at 879-80 (citations omitted).

Similarly, the Supreme Court has held that:

---

[5] It is true, as Plaintiff observes, that in Atlantic Marine, the Supreme Court stated that section 1404(a) "is merely a codification of the doctrine of forum non conveniens for the subset of cases in which the transferee forum is within the federal court system." 134 S.Ct. at 580. Nevertheless, the Court still engaged in the process of weighing factors; the analysis did not end with the plaintiff's choice of venue being given "paramount consideration."

8

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations.[6] Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." § 1404(a).
>
>> [6]Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Ibid. (internal quotation marks omitted).

Atlantic Marine, 134 S. Ct. at 581 & n.6.[6]

Defendants argue that their proposed venue would be a more convenient forum based primarily upon the claims arising there (they relate to each party's obligations with regard to WES) and based upon the Ohio Federal Action which was previously filed in the Southern District of Ohio and which it contends is related to this case. In addition, it notes the judge's familiarity with the matter and contends that it would be a waste of judicial resources to litigate the claims in this district from the beginning. Plaintiff responds that Defendants are relying upon "first to file" rule, but that the rule does not apply when a party institutes a lawsuit in anticipation of another party's imminent suit in another less favorable forum, as Defendants did here in filing what became the Ohio Federal Action in response to a demand letter sent by SPV on May 26, 2016. It also argues that Defendants' conduct was not confined to Ohio but had far-reaching

---

[6] The Supreme Court went on to modify the transfer analysis when a defendant relies upon a forum selection clause. Id. at 581-82. However, Defendants do not cite a forum selection clause in this case and therefore the regular balancing of factors applies.

implications on SPV in Pennsylvania, that the witnesses are the WES officers and SPV's witnesses are located in Pennsylvania, that the location of books and records is not a relevant factor and that this Court would be more familiar with Pennsylvania law than the court in Ohio (which has already made errors by relying on old Pennsylvania law).

In a reply brief, Defendants argue that: 1) Plaintiff admits that most of the public and private factors weigh in favor of transfer or are neutral; 2) the anticipatory filing exception to the first filed rule should be raised in the first filed action and is inapplicable in any event because the demand letter Plaintiff cites did not clearly indicate that SPV would bring suit or where and because the Ohio Federal Action included claims beyond the scope of the demand letter; 3) Plaintiff does not dispute that the claim arose in Ohio, but rather argues that the damages were felt in Pennsylvania; 4) Plaintiff admits that the Defendants are "key" witnesses, but two of the Defendants are Ohio residents and the third is a West Virginia resident, and the Receiver (as well as certain other government officials who will be witnesses in the case) are all Ohio residents; and 5) the fact that discovery was set to close in the Ohio Federal Action on June 30, 2017 does not change the calculation because discovery can be continued.

Private Factors

As explained above, Plaintiff has chosen this forum and Defendants have expressed a preference for the Southern District of Ohio. Defendants contend that they are persons and not a corporation like SPV, and therefore their financial condition is "presumably" worse. Plaintiff responds that Defendants offer no support for their supposition and that SPV (a closely held company) has lost over $2.4 million as a result of Defendants' conduct.

The parties have not provided sufficient information to evaluate this factor and therefore it is neutral. The other private factors are: where the claim arose, the convenience of the parties,

10

the convenience of witnesses and the location of books and records.

### Where the Claim Arose

Courts have recognized that the "most appropriate venue is generally 'where a majority of events giving rise to the claim arose.'" Alcantarilla v. State Farm Mut. Auto. Ins. Co., 2015 WL 8785007, at *8 (W.D. Pa. Dec. 15, 2015) (McVerry, J.) (quoting In re Amkor Tech, Inc. Sec. Litig., 2006 WL 3847488 (E.D. Pa. Dec. 28, 2006)). Defendants argue that most of the operative facts occurred in Ohio, and Plaintiff does not contest this assertion. Rather, it merely states that the effect of Defendants' actions was felt beyond Ohio and particularly in this district. This is not a relevant consideration. Thus, this factor weighs in favor of transfer.

### Convenience of Witnesses

The Court of Appeals has observed that one of the private factors is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. This factor relates only to non-party witnesses; "The party witnesses are presumed to be willing to testify in either forum despite any inconvenience." Hillard v. Guidant Corp., 76 F. Supp. 2d 566, 570 (M.D. Pa. 1999). Plaintiff argues that its witnesses are in Pennsylvania, as are the First Niagara Bank witnesses, although it does not contend that these witnesses would be unavailable to appear in the Southern District of Ohio. Defendants have identified the Receiver and officials of the Ohio Department of Natural Resources as witnesses who live in Ohio, although they do not contend that these witnesses would be unavailable to appear in this Court. Thus, this factor is neutral.

### Location of Books and Records

Plaintiff argues that the location of books and records is similarly limited to the extent that the files could not be produced in the alternative forum. Jumara, 55 F.3d at 879. Defendants

argue that the WES book and records are located in DeepRock's principal place of business in Marietta, Ohio.

Modern technological advances have rendered this factor less significant than it was previously. Nevertheless, "[t]hat access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." In re Volkswagen, 545 F.3d at 316. See also In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224 (Fed. Cir. 2011) ("[w]hile advances in technology may alter the weight given to these factors, it is improper to ignore them entirely.") Thus, the location of book and records favors transfer, albeit not strongly.

Public Factors

As noted above, the public factors include: the enforceability of the judgment, practical considerations, court congestion, local interest in the controversy, public policies of the fora, and the applicable law in diversity cases. The parties assert that the factors of enforceability of the judgment and local interest in the controversy are neutral.

Court Congestion

Defendants contend that this Court has significant vacancies and that this factor weighs I favor of transfer. Plaintiff does not address this factor. Defendant's fact is inapposite, as this factor is usually based on the number of civil and criminal cases pending in the two forums and the median time for disposition.

Thus, this factor is neutral, but as Judge Conti has observed: "Court congestion is not a decisive factor; it must be weighed against all other relevant factors, and district courts within the Third Circuit have not placed 'great importance' on this factor." York Group, Inc. v. Pontone, 2014 WL 3735157, at *13 (W.D. Pa. July 28, 2014).

Relatedness of Ohio Federal Action

Defendant argues that the Ohio Federal Action, which arose out of the same agreements between the same parties, is related to this case and that this factor weighs in favor of transfer. "The presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other Jumara factors, such as the convenience of the parties and witnesses, would suggest the opposite." Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 459 (E.D. Pa. 2013) (citation omitted). In addition, as noted above, the Receiver Action and the DeepRock suit are pending in the Court of Common Pleas of Washington County, Ohio.

Plaintiff responds that, although generally applied in matters of jurisdictional disputes, under the "first to file" rule, there is an exception for cases filed in anticipation of imminent suit in an unfavorable forum, as here. Defendants deny that the Ohio Federal Action was filed in anticipation of this suit.

The first to file rule can be summarized as follows: "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." E.E.O.C. v. University of Pa., 850 F.2d 969, 971 (3d Cir. 1988) (citation omitted). However, there are exceptions to this rule, including when a party files suit in anticipation of suit in another forum. Id. at 972. Plaintiff contends that the exception applies here. Defendants deny that the Ohio Federal Action was an anticipatory suit.

The Court need not decide this issue, because Defendants are not invoking the first to file rule and requesting that this Court dismiss the case. Rather, they are requesting that this Court transfer the matter to the Southern District of Ohio for consolidation with the already pending Ohio Federal Action. Plaintiff's citation to the first to file rule is irrelevant and, as cited above, the fact that a related case is pending in another district court weighs heavily in favor of transfer.

13

Applicable Law

Plaintiff contends that Pennsylvania law will govern this case and that this Court is in a better position to apply Pennsylvania law than a court in Ohio. Indeed, Plaintiff argues that the court in the Ohio Federal Action has already misapplied Pennsylvania law. Plaintiff contends that Ohio law regarding duties owed among LLC members is governed by statute; whereas in Pennsylvania it is the subject of evolving case law.

The Supreme Court has noted that "[f]ederal judges routinely apply the law of a State other than the State in which they sit." Atlantic Marine, 134 S.Ct. at 584. Therefore, it does not appear that the court in Ohio will be unable to resolve breach of fiduciary duties issues by applying Pennsylvania law if this case is transferred. This Court should decline Plaintiff's invitation to review the rulings of the Ohio court in the action pending there.

In conclusion, the main factors resolve as follows: Plaintiff has selected this forum and Defendants' preference is the Southern District of Ohio. The facts underlying the claims arose in Ohio. The witnesses and documents can be produced in either forum, although the documents are located in Ohio. However, the relatedness of the Ohio Federal Action, and the judge's familiarity with the parties and the agreements at issue, is a strong factor in favor of transfer that supplements the other factors which are either neutral or weigh slightly in favor transfer.

Finally, it is noted that this case has not yet had a Rule 16 case management conference and thus the "interest of justice" is not affected by transferring the case at this early stage of the proceedings. For all of these reasons, the balance of factors favors transfer of this case to the Southern District of Ohio, Eastern Division.

Therefore, it is recommended that the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 filed by defendants (ECF No. 8) be granted and that this action be transferred to the

United States District Court for the Southern District of Ohio, Eastern Division.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by September 11, 2017. Any party opposing the objections shall file a response by September 25, 2017. Failure to file timely objections will waive the right of appeal.

                                        Respectfully submitted,

                                        s/Robert C. Mitchell_____
                                        ROBERT C. MITCHELL
                                        United States Magistrate Judge

Dated: August 28, 2017